FILED
SEP 21 2004
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
SEP 22 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
SEP 02 2004

SHERMAN INDUSTRIES, INC., )
f/k/a SHERMAN INTERNATIONAL )
CORPORATION, )
 )
    Plaintiff, )
 )
v. ) Case No. CV-03-TMP-1858-NE
 ) CV-03-TMP-462-S
FIDELITY AND DEPOSIT COMPANY )
OF MARYLAND, )
 )
    Defendant and )
    Third-Party Plaintiff, )
 )
v. )
 )
L.C. POSEY & SONS, INC., )
JEFFREY A. POSEY, and )
JUDY R. POSEY, )
 )
    Third-Party Defendants.)

## MEMORANDUM OPINION

    This cause is before the court on the motion for summary judgment filed by the plaintiff, Sherman Industries, Inc. ("Sherman"), on June 29, 2004. Plaintiff seeks summary judgment in its favor on all claims on grounds that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. This matter has been briefed by the movant and supported by an evidentiary submission. Defendant Fidelity and Deposit Company of Maryland ("Fidelity") has responded to the

no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

3

substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc.,

4

849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. <u>Anderson</u>, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. FACTS

For purposes of summary judgment, the following facts are undisputed. Sherman provided goods and materials to J & J Masonry, Inc. ("J & J") on three separate construction projects in Alabama, which the parties refer to as the Cintas Project, the UAB Project, and the Carlton Cove Project. Upon delievery of those goods and materials, J & J agreed to pay Sherman for them within 30 days, and to pay interest at the rate of 1.5 % per month on any overdue invoices. By taking delivery, J & J also agreed to pay the costs of collection, should a collection action be required, including reasonable attorneys fees. (<u>See</u> Exhibits to Kay Boosa Affidavit).

On the Cintas Project, J & J paid for some of the goods and materials, but failed to pay $58,708.22 that was owed. On the UAB Project, J & J failed to pay $21,555.32 that it owed to Sherman for

5

goods and materials. On the Carlton Cove Project, J & J failed to pay $98,283.75 for goods and materials Sherman delivered to J & J. On each of the three projects, Fidelity issued a series of performance and payment bonds on behalf of J & J. J & J failed to complete work on those projects and failed to pay for some or all of the labor and materials furnished on the projects, thereby defaulting on its obligations as a subcontractor on the projects. In July of 2002,[2] Fidelity received a proof of claim from Sherman on the Cintas Project in the amount of $58,708.22. In September of 2002, Fidelity received notice from Sherman of J & J's non-payment on the UAB Project in the amount of $21,551.32. This was followed with a proof of claim in November of 2002,[3] when Fidelity received a proof of claim from Sherman on the UAB Project in the same amount of $21,551.32. Also in September of 2003,[4] Sherman submitted a proof of claim to Fidelity on J & J's failure to pay $98,283.75 on the Carlton Cove project. J & J did not dispute the amounts billed, and the president of J & J, Jeff Posey, has testified that

---

[2] The plaintiff asserts that it provided a sworn proof of claim to Fidelity on July 23, 2002. The defendant admits that a proof of claim was received on July 29, 2002.

[3] The plaintiff asserts that it provided a sworn proof of claim to Fidelity on November 11, 2002. The defendant admits that a proof of claim was received on November 15, 2002.

[4] The plaintiff asserts that it provided a sworn proof of claim to Fidelity on September 3, 2002. The defendant admits that a proof of claim was received on September 9, 2002.

J & J had a method of resolving disputes when delivery of goods was disputed, and that none of the deliveries from Sherman at issue in this lawsuit was disputed. Furthermore, Posey testified that, to the best of his knowledge, all deliveries were received, even though some deliveries may not have been signed for at the time of the delivery. Some delivery tickets were not signed at the time goods and materials were purported delivered.

Fidelity argues that it conducted an investigation of the claims and discovered that Sherman failed to produce signed delivery tickets that would evidence the delivery of some of the goods and materials. The absence of signed delivery tickets, defendant argues, creates a genuine issue of material fact concerning whether all of the goods and materials claimed by Sherman to have been delivered were, in fact, delivered. Fidelity contends this dispute must be resolved by a jury.

Following receipt of the proofs of claim and its own investigation, Fidelity offered on November 11, 2002, to pay $57,493.62 as partial satisfaction of the Carlton Cove Project claim. On November 12, 2002, Fidelity offered to pay $50,568.63 as partial satisfaction of the Cintas Project claim, and on December 4, 2002, Fidelity offered payment of $18,434.00 as partial satisfaction of the UAB Project claim. The offers of partial payment were declined by Sherman, and on January 27, 2003, Sherman

7

filed the complaint commencing this action. Sherman seeks the full amount of each claim, along with interest and attorneys fees.

### III. DISCUSSION

The plaintiff asserts that it is entitled to a summary adjudication in its favor because there exists no issue of genuine fact as to the liability of the defendant for the amounts claimed. The defendant argues that Sherman has failed to produce signed delivery tickets for some of the materials that comprise the claim, and that the delivery of some portion of the goods and materials therefore cannot be verified.

The parties agree that there exists no dispute as to whether Fidelity owes Sherman payment for the goods and services delivered to J & J for the three projects at issue. Fidelity admits that it bonded payment of J & J's debts for goods and materials on these three projects. Furthermore, there is no dispute that the amount owed is at least $126,496.25, which is that portion of the debts for which there are signed delivery tickets. The only issue that must be resolved concerning the amount of principal owed is whether there exists a genuine issue of material fact as to Fidelity's liability for the remaining goods and materials Sherman alleges were delivered, totalling $40,790.13, and the resulting interest and attorneys fees incurred in this action.

8

The court notes that the figures set forth by Sherman are supported by notices of non-payment sent to J & J at the time the balance was owed. There is no evidence that J & J disputed any of the amounts or questioned the delivery of any of the goods and materials on any of the projects. To the contrary, the conduct of J & J and the testimony of Jeff Posey evidence that J & J received the goods and materials and agreed that the amount Sherman billed was accurate. Although some delivery tickets were not signed, no one was testified that any of the goods and materials claimed by Sherman were not, in fact, delivered to J & J. There is no evidence or indication that any of the goods and materials for which J & J was billed were not delivered.

Defendant, in response to the motion for summary judgment, simply argues that Sherman has failed to adequately prove that some of the goods actually were delivered. This argument seems to assert that summary judgment should be denied because the movant has failed to carry its initial burden of proving its entitlement to judgment. The court believes otherwise. The defendant has not demonstrated to the court that there exists any contractual provision that requires Sherman to evidence each delivery with a signed ticket, nor has the defendant offered any evidence that the claimed goods and materials were not delivered. The only evidence, besides conclusory statements in the brief, are letters to

9

plaintiff's counsel from the claims representative of Zurich North American Surety & Financial Claims. It seems to the court that these letters simply state Zurich's position on denying some portion of the claims. The letters do not "prove" that the goods were not delivered, nor do they call into question the plaintiff's evidence that the amount billed to J & J accurately reflected the true amount of goods and materials actually delivered.

The court finds that the movant has submitted a well-supported motion for summary judgment, and that the defendant has failed to raise any genuine issue of material fact concerning the amounts the plaintiff claims are due to be paid. Accordingly, the motion for summary judgment in favor of the plaintiff is due to be granted.

Interest is calculated against the outstanding debt at the simple interest rate of 1.5 percent per month. Because the evidence does not establish clearly what month the debts began to accrue against J & J, the court has calculated interest only from the month after proofs of claim were submitted to Fidelity. While this may not compensate Sherman with all of the interest to which it may be entitled, this is the same method used by Sherman and reflected in the affidavit of Kay Boosa. Thus, at 1.5 percent a month, the *monthly* interest accrual against the outstanding Cintas debt is $880.62 ($58,708.22 X .015 = $880.62), against the UAB

Project debt is $323.33 ($21,551.32[5] X .015 = $323.27), and against the Carlton Cove Project debt is $1,474.26 ($98,283.75 X .015 = $1,474.26). On the Cintas Project debt, 25 months have elapsed; on the UAB Project debt, 21 months have elapsed; and on the Carton Cove Project debt, 23 months have elapsed. Multiplying the monthly interest accrual of each debt against the number of months each respective debt has gone unpaid, interest on each debt as of September 1, 2004, is $22,015.50 on the Cintas Project debt, $6,788.67 on the UAB Project debt, and $33,907.98 on the Carlton Cove Project debt.

## IV.   CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court determines the motion for summary judgment filed by the plaintiff is due to be granted and judgment is due to be entered in favor of the plaintiff in the following amounts, plus the costs of this action:

---

[5]   There is some disparity in the plaintiff's offerings as to whether the figure is $21,555.32, or $21,551.32. However, because the Proof of Claim was made in the amount of $21,551.32, it is that amount upon which the court relies.

11

1. Fifty-eight thousand seven hundred and eight and 22/100 ($58,708.22) dollars on the Cintas Project, plus interest at 1.5 % per month beginning one month after the claim was received by Fidelity (August 2002) until the date this order is entered, in the amount of twenty-two thousand fifteen and 50/100 ($21,134.95) dollars.

2. Twenty-one thousand five hundred fifty-five and 32/100 ($21,551.32) dollars on the UAB Project, plus interest at 1.5 % per month beginning one month after the proof of claim was received by Fidelity (December 2002) until the date this order is entered, in the amount of six thousand seven hundred eighty-eight dollars and 67/100 ($6,788.67) dollars.

3. Ninety-eight thousand two hundred eighty-three and 75/100 ($98,283.75) dollars on the Carlton Cove Project, plus interest at 1.5 % per month beginning one month after the claim was received by Fidelity (October 2002) until the date this order is entered, in the amount of thirty-three thousand nine hundred seven and 98/100 ($33,907.98) dollars.

Thus, summing these principal debts and interest, the total judgment to be entered in favor of Sherman and against Fidelity is two-hundred forty-one thousand two hundred fifty-five and 44/100 ($241,255.44) dollars, plus the costs of this action and a reasonable attorneys' fee

The court will reserve entry of judgment until the plaintiff has presented evidence regarding the amount of attorney's fee it seeks as part of the judgment. Plaintiff's counsel is DIRECTED to file any motion for attorneys' fees within fourteen (14) days of the date this order is entered, and in accordance with Federal Rule of Civil Procedure 54(d)(2)(A). Defendant may respond to the motion within fourteen (14) after the date of service of the motion.

DATED the 2   day of September, 2004.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

13