

FILED

2005 Jan-11  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHERMAN INDUSTRIES, INC.,<br>f/k/a SHERMAN INTERNATIONAL<br>CORPORATION,<br><br>       Plaintiff,<br><br>v.<br><br>FIDELITY AND DEPOSIT COMPANY<br>OF MARYLAND,<br><br>       Defendant and<br>       Third-Party Plaintiff,<br><br>v.<br><br>L.C. POSEY & SONS, INC.,<br>JEFFREY A. POSEY, and<br>JUDY R. POSEY,<br><br>       Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No.  5:03-CV-462-TMP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

This cause is before the court on two motions: the defendant/third-party plaintiff's motion to alter, amend, or vacate the judgment previously entered against it and in favor of the plaintiff (Doc. 40), and the plaintiff's motion for an award of attorney's fees (Doc. 45). Both motions have been briefed. For the reasons set forth below, the defendant/third-party plaintiff's motion to alter, amend or vacate the judgment will be denied, and the motion for an award of attorneys' fees will be granted.

In support of its motion to alter, amend, or vacate the judgment against it, Fidelity and Deposit Company of Maryland ("Fidelity") argues that the court erred by awarding interest to the plaintiff at the rate of 18% per annum. Fidelity argues that an Alabama statute, Ala. Code § 8-8-8 (1975), allows for prejudgment interest only at the rate of 6% per annum. That section states:

> All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.

Although § 8-8-8 authorizes the award of prejudgment interest for debts based on a contract, it does not prescribe the rate of interest. That is found in § 8-8-10, which provides in material part:

> Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, **at the same rate of interest as stated in said contract**; all other judgments shall bear interest at the rate of twelve (12) percent per annum.... [Bolding added for emphasis].

Alabama case law has construed this statute to apply the rate of interest provided in the contract or, if the contract does not state a rate, then the fixed rate of 12% per annum found in the statute. See Goodwyn, Mills & Cawood, Inc. v. Markel Insurance Co., ___ So. 2d ___, ___, 2004 WL 1588101 at *6 (Ala. 2004) ("This language provides for application of the contract rate or, if there is no contract rate, a fixed rate.").

In this case, a contract debt existed between plaintiff and J & J Masonry for the delivery of concrete used by J & J in its masonry business. The defendant Fidelity issued

performance bonds to cover J & J's debt for such materials, if unpaid. In most instances, delivery tickets presented to J & J at the time the concrete was delivered by plaintiff recited that the amount owed for the delivery would accrue interest at the rate of 1.5% per month (or 18% per annum). When the concrete was accepted by J & J under these terms, a contract rate of interest for the outstanding debt was established. When J & J failed to pay these debts, Fidelity was called upon to do so under the terms of its bonds. Thus, as J & J owed interest at the rate of 1.5% per month, that was the rate used to calculate prejudgment interest pursuant to § 8-8-10. Because no error occurred, Fidelity's motion to alter, amend, or vacate the judgment is DENIED.

Plaintiff Sherman Industries, Inc., ("Sherman"), has filed a motion seeking an award of attorneys' fees to offset the costs it has incurred collecting the debt owed to it. It seeks a fee of 15% of the total debt collected, or $36,188.32. Not surprisingly, the defendant opposes the motion, arguing that a 15% fee is excessive.

Alabama law controls the award of a fee in this case, as the claims resolved were based entirely on Alabama law and the right to an award of a fee arises from contract, not any federal statute. As with the rate of interest discussed above, the right to an attorney's fee in this case is grounded on language in the delivery tickets accepted by J & J each time plaintiff delivered concrete for use by J & J. The standard delivery tickets expressly provided that, "Failure to pay when agreed is basis for legal action and buyer agrees in event of suit to pay all costs of collection and reasonable attorneys fees and hereby waives all rights of exemption

as to personal property under the laws of the State of Alabama and any other state."  The delivery ticket formed a contract between plaintiff and the buyer, J & J, on each occasion of delivery of concrete by plaintiff, and those series of contracts authorized plaintiff to collect a reasonable attorneys' fee in the event it had to sue to collect the debt.[1]  The contractual nature of the fees and expenses also means that the fee awarded to plaintiff and the expenses plaintiff incurred are part of the actual damages being sought for the breach of contract.

Alabama law on contract-based fees is summed up in the following passage from Norman v. Montgomery Wholesale Lumber, 678 So. 2d 1110 (Ala.Civ.App. 1996):

> The Alabama Supreme Court has held that "[t]he reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court."  Lanier v. Moore-Handley, Inc., 575 So. 2d 83, 85 (Ala. 1991).
>
> "When reviewing the amount awarded as an attorney's fee in a case, the appellate court should consider the entire record. Such a review of the record is made with a presumption in favor of the trial court's determination. Further, the trial court's judgment will not be disturbed on appeal unless it is apparent from a review of the entire record that the trial court abused its discretion."

---

[1] Fidelity argued in opposition to summary judgment that it was not liable for about 25% of the debt because plaintiff could not produce delivery tickets evidencing actual deliveries for those debts.  It acknowledged that it had identified delivery tickets correlated to the remaining 75% of the debt.  The court rejected that argument, finding that plaintiff's affidavits established that actual deliveries of concrete occurred and that delivery tickets were the usual course of business between plaintiff and J & J.  That evidence was not rebutted merely by plaintiff's inability to produce some delivery tickets, particularly in light of J & J's admission that all of the claimed deliveries of concrete actually occurred. The court finds that the standard business practice by plaintiff was to issue a delivery ticket to buyer at the time of delivery of concrete and that the ticket included the language quoted in text.

Mapes v. Prickett, 644 So. 2d 478, 479 (Ala.Civ.App. 1994), citing Lanier, 575 So. 2d at 85.

There are 12 factors that the trial court should consider when awarding attorney fees: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of the attorney's responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Anderson v. Lee, 621 So. 2d 1305, 1307 (Ala. 1993).

"Although all of these criteria need not be met, they are available for the trial court to consider in connection with each claim for an award of attorney fees.
"While we recognize that the reasonableness of an award of attorney fees is within the discretion of the trial court, subject to correction only for an abuse of discretion, we must be able to discern from the record what factors the trial court considered in determining the amount of attorney fees."

Mapes, 644 So.2d at 479 (citations omitted).

Norman v. Montgomery Wholesale Lumber, 678 So. 2d 1110, 1114-5 (Ala.Civ.App. 1996).

Several of the twelve factors identified by the Alabama courts do not weigh either in favor of or against the award of a particular fee in this case. This is a collection case, in substance, and, although it involves a significant amount of money, it is not a particularly large or difficult one. There appear to be no unusual time constraints involved or the type of litigation that might preclude counsel from taking other employment. The time expended by plaintiff's counsel was not unusual or excessive. Attorney Jeffrey Brumlow put in 62 hours,

while Garrick Stotser worked 14 hours on the case. Likewise, even though Mr. Brumlow and Mr. Stotser have fine reputations in the legal community and are experienced lawyers, those qualities did not have a particular weight on the outcome of this case. Thus, factors (1), (2), (3), (4), (5), (11), and (12) do not weigh heavily either way.

Turning to the factors that do have an impact on the fee calculation, an apparently strong one is the measure of success achieved (factor (6)). Plaintiff's attorneys succeeded in getting a judgment for the full amount of the debt owed by J & J and covered by defendant's bonds, even though defendant contested about 25% of the debt. They successfully obtained prejudgment interest at a rate contested by defendant, 18% per annum, rather than 6%. Having said that, the legal issues underlying plaintiff's claim were not particularly difficult and were driven chiefly by contracts and Alabama statutes. And, on closer analysis, the success was not so great. Out of the total claim of $167,286.38, Fidelity contested only $40,790.13, plus the difference in prejudgment interest between 6% per annum and 18% per annum. Seventy-five percent of the principal debt and one-third of the prejudgment interest were never in doubt. By this measure, counsel's success should be gauged against the $40,790.13 in principal debt and $41,807.10 in prejudgment interest they secured over Fidelity's objections.

Another factor strongly supporting plaintiff's request for a 15% fee is factor (10), the fee customarily charged for services similar to those rendered in this case. Typical collection cases based on contract involve fees of between 25% and 33% of the amount of debt

collected, but these fees also ordinarily are contingent in nature, under which the attorney takes a risk that he will be able to collect anything at all. That risk justifies a higher contingent fee. While plaintiff's request for a 15% fee is less than the ordinary contingent fee awarded, plaintiff was paying a fix, albeit reduced, hourly rate of $150.00 per hour for the work of both attorneys. This resulted in far less risk to the attorneys that they would not be fully compensated for their work. As of September 30, 2004, counsel had billed the plaintiff $13,760.47 for their services in this case.[2] Thus, factor (8), whether the fee was fixed or contingent, tends to mitigate the strength of factor (10) because the fee here was a fixed rate.

The fixed nature of the fee arose from the professional relationship between plaintiff and counsel, considered here as factor (9). Counsel has been performing collection work for plaintiff since 1997. Under that relationship, plaintiff pays a fixed, but reduced, hourly fee for the collection work performed by counsel. In effect, counsel has been discounting their fees as a professional favor to plaintiff and in recognition of the lucrative nature of the volume of work supplied by plaintiff. While this undoubtedly benefits both parties—counsel and plaintiff—there is no reason why the defendant in this case should benefit from that relationship. The ordinary hourly rates charged by Mr. Brumlow and Mr. Stotser are $175.00

---

[2] This sum apparently includes Mr. Brumlow's 62 hours and Mr. Stotser's 14 hours at $150.00 per hour (a total of 76 hours times $150.00 equals $11,400.00), plus actual expenses of $687.20, and $1,663.27 in unexplained fees or costs. Presumably, this latter amount reflects secretary or paralegal time billed to the client.

and $235.00, respectively, and the court sees no reason why the defendant should not be required to pay this ordinary hourly rate for the hours actually expended by them.

The expenses incurred by plaintiff pursuing judgment in this case (factor (7)) were relatively low, $482.20 in deposition expenses and a $205.00 filing fee.  The low nature of the expenses reflects the lack of difficulty this case entailed, and it augurs in favor of a lower fee.

Having considered all of the factors relevant to the setting of a fee in this case, the court believes that a contingent fee of 15%, calculated against the entire judgment, while less than the ordinary rate, but which results in a total fee of more than $36,000.00, is too much. Given the solvent nature of the defendant and the fact that the it did not contest some 75% of the amount claimed, counsel had little risk that they would not collect something. Moreover, counsel were being paid a fixed hourly fee, eliminating all risk that they would not be compensated for their services.  In terms of actual cost, plaintiff had to spend only $13,760.47 to obtain its judgment.  Although it may have to spend more to collect it, it will not be significantly more.

There are several ways of calculating a fee award for plaintiff.  First, plaintiff could be awarded simply the actual fee and expenses it incurred, $13,760.47 plus expenses of $687.20.  Second, a fee award could be calculated on the hours expended by counsel, but multiplied by their higher ordinary rates of $175.00 per hour for Mr. Brumlow's 62 hours and

$235.00 an hour for Mr. Stotser's 14 hours.[3]  This has the advantage of compensating plaintiff for its real expenses in collecting the debt, without giving the defendant the benefit of the reduced hourly rate charged by counsel to a favored client.  Third, a fee could be set at 15% of the amount of the debt successfully obtained by counsel over Fidelity's objection, that is, the $40,790.13 in principal debt and $41,807.10 in prejudgment interest[4] that Fidelity actually contested.  Because the rest of the debt and one-third of the prejudgment interest was not contested, neither plaintiff nor counsel should be compensated for pursuing it.[5]

The court believes the second option is the fairest to all concerned.  By calculating a fee based on the attorneys' ordinary rates, plaintiff is fully compensated to the costs it has paid pursuing its judgment and counsel are fully compensated at their usual hourly rates.  This method is superior to the first option because Fidelity should not be allowed to benefit from the lower hourly rates due to the professional relationship between plaintiff and its attorneys.  It is superior to the third option because it measures the actual time expended as

---

[3]  Multiplying these hours by the stated rates would result in a fee of $14,140.00.  As reflected in footnote 2 above, however, there was an additional $1,663.27 that was actually billed for some other costs not readily apparent from the evidence.  Assuming that was for secretarial or paralegal time, it too should be added to the fee of the attorneys, bringing the total fee to $15,803.27, plus actual expenses of $687.20.

[4]  Totaling $40,790.13 plus $41,807.10, results in plaintiff's counsel actually achieving success in the amount of $82,597.23, that is, obtaining something that Fidelity actually contested. Fifteen percent of that amount would be a fee of $12,389.58.

[5]  The court recognizes that the interest sum of $41,807.10 is not strictly accurate because it is two-thirds of the total awarded interest of $62,712.15, which was calculated on the full debt, even that part contested by Fidelity.  If Fidelity had prevailed on its objection to paying the $40,790.13 not corroborated by delivery tickets, the total interest would have been calculated on the smaller amount of $126,496.25.

9

a result of contested matters.  The best measure of what it cost to resolve the actual disputes between the parties would be the time actually recorded, not an arbitrary percentage.  This calculation does not charge Fidelity with fees on disputes that did not exist or that were unrelated to amounts or issues it did not contest, and thus is superior to plaintiff's proposal.

Based on these considerations, therefore, plaintiff's motion for the award of an attorneys' fee is GRANTED, and plaintiff Sherman Industries, Inc., is AWARDED a total attorneys' fee of FIFTEEN THOUSAND EIGHT HUNDRED THREE AND 27/100 ($15,803.27) DOLLARS, plus actual expenses of SIX HUNDRED EIGHTY-SEVEN AND 20/100 ($687.20) DOLLARS.

The court will enter a separate judgment for the plaintiff's full recovery, including the debt, prejudgment interest, attorneys' fees, and litigation expenses, all of which are recoverable by the plaintiff under the terms of the contracts, in the amount of TWO HUNDRED FIFTY-SEVEN THOUSAND SEVEN HUNDRED FORTY-FIVE AND 91/100 ($257,745.91) DOLLARS, plus post-judgment interest and costs.

DONE this 10th day of January, 2005.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE